KENNEDY, Justice.
This is an appeal of a summary judgment entered in favor of the defendant. We reverse and remand.
On January 7, 1987, Irene Webb was injured while waiting to pay for gasoline inside an automobile service station operated by the Salmon Oil Company, Inc. Salmon Oil’s station in Auburn also serves as a station for Greyhound Bus Lines. A small office inside the station serves not only as the waiting area for bus passengers, but also as the area in which bus tickets, refreshments, and gasoline are purchased. A single door serves as both the entrance and exit to the office.
On the day of her injury, Ms. Webb drove her automobile to Salmon Oil, pumped gasoline into her car’s gasoline tank, and entered the office to pay for the gas. After paying for the gas, she turned to leave the office and return to her car. However, immediately after she passed through the door, she alleges, she was knocked to the floor by two males who were attempting to get on a bus before it departed. Ms. Webb was knocked unconscious and suffered injuries to her kidney, back, legs, and hand.
On January 6, 1989, Ms. Webb filed suit, alleging that Salmon Oil negligently operated the service station; that Salmon Oil failed to “provide adequate and safe improvements” for the operation of the station; and that Salmon Oil negligently managed, supervised, and controlled its invitees.
The trial court granted Salmon Oil’s motion for summary judgment, and this appeal followed.
At the outset, we note that one who has entered the premises of a gasoline station in order to purchase gasoline is an invitee and, as an invitee, is owed a duty of care from the station owner or operator; the owner or operator has the duty to maintain the premises in a reasonably safe condition. Standard Oil Co. v. Gentry, 241 Ala. 62, 64, 1 So.2d 29, 31 (1941). Thus, the question this Court must answer is: Was there substantial evidence that Salmon Oil failed to maintain the premises in a reasonably safe condition? See § 12-21-12, Code 1975.
Charles Salmon, the owner of Salmon Oil, admitted in deposition testimony that gasoline, bus tickets, refreshments, and Auburn University football tickets were sold from a single office measuring 10 feet by 10 feet. In order to purchase any of these services, customers often had to stand in front of a desk adjacent to a door that served as both an entrance and an exit. As a result, these customers were placed in the path of those entering and exiting the office.
On those occasions when a bus would arrive at Salmon Oil, it would remain in the station for a short time. The departure of the bus was not preceded by an announcement from within the office, but, instead, the bus driver would “rev up” the engine of the bus in order to signal its departure. Immediately thereafter, the bus would depart.
Thus, those passengers in the office waiting to depart on the bus, or those who left the bus to buy refreshments before continuing on, were given little notice of the departure. In order to get on the bus before it departed, these passengers were forced to go through or around those standing in front of the desk by the door.
Ms. Webb testified that the following happened on the day she was injured: After refueling her car, she went into the office to pay for the gasoline. At or about the time she paid for the gasoline, she noticed a Greyhound bus pull into the station. Two males disembarked and came into the station. After she paid for the gasoline and as she was walking through the door, she heard the bus rev its engine. At that point, she heard the two males immediately behind her rush from the office in an attempt to get on the bus. Because her back was to the two males and because she was knocked out, Ms. Webb could not state with absolute certainty that the two men knocked her down. However, she stated that their proximity to her and the fact that they were in a hurry to get on *280 the bus led her to conclude that it was the two men who knocked her down.
Mr. 0. Clyde Prather, Jr., the director of public safety and the former director of planning and codes enforcement for the City of Auburn, stated in an affidavit that he had personally inspected the Salmon Oil building and determined that the size and arrangement of the building made it inadequate and inappropriate for public use.
Taken together, Ms. Webb’s testimony, Mr. Prather’s affidavit, and Mr. Salmon’s testimony regarding the size of the Salmon Oil office and the nature of the activities in and around the office present substantial evidence that Salmon Oil breached its duty to maintain the premises in a reasonably safe condition.
Accordingly, the judgment is reversed and this cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, SHORES and HOUSTON, JJ., concur.